# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON EDWARD NUNES,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-2683-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13 & 16. For the reasons discussed below, the Commissioner's motion is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since April 14, 2012. Administrative Record ("AR") at 167. His application was denied initially and upon reconsideration. *Id.* at 90-93, 96-100. A hearing was held before administrative law judge ("ALJ") Carol L. Buck. *Id.* at 33-63.

/////

/////

1

On October 20, 2016, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 18-26. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since April 14, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine with spinal stenosis and lumbar radiculopathy (20 CFR 404.1520(c)).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) specifically as follows: the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; the claimant can stand and/or walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday; the claimant can climb ramps and stairs, kneel, crouch and crawl frequently; the claimant can climb ladders, ropes and scaffolds and stoop occasionally; the claimant can balance with no limitations and the claimant must avoid exposure to vibrations.

   * * *

6. The claimant is capable of performing past relevant work as a produce clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

   * * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 14, 2012, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 20-27.

Plaintiff's request for Appeals Council review was denied on November 21, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

Plaintiff offers five arguments as to how the ALJ erred. First, he claims that the ALJ failed to consider and assess various documented medical conditions at step two. Second, he claims the ALJ erred in failing to explicitly weigh the combined impacts of all his impairments at step three. Third, he claims that the ALJ made multiple errors in weighing medical opinions of both Dr. Hanley, plaintiff's chiropractor, and the state agency physicians. Fourth, he claims that the ALJ failed to provide adequate reasons for disregarding his testimony regarding his pain and limitations. Fifth, he argues that the ALJ's step four and five findings are based on a flawed residual functional capacity ("RFC") assessment.

The court, for the reasons stated hereafter, finds none of these arguments convincing.

I.   Failure to Consider All Medical Conditions

Plaintiff notes that, at step two, the ALJ identified only his "degenerative disc disease of the lumbar spine with spinal stenosis and lumbar radiculopathy." ECF No. 13 at 13; AR at 22. He states that the ALJ neglected to mention and assess his: (1) arthritic hip/bone spurs; (2) two-level annular tear at L4-5 and L5-S1; (3) Lumbosacral Spondylosis; (4) obesity; and (5) gastroesophageal reflux disease. ECF No. 13 at 13-14.

The U.S. Court of Appeals for the Ninth Circuit has held that a claimant is prejudiced at step two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this

4

omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."); *see also Hickman v. Comm'r*, 399 F. App'x 300, 302 (9th Cir. 2010) (unpublished) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor."). Additionally, the failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from said impairment in subsequent steps. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

The court finds that, to the extent the ALJ's failure to assess plaintiff's other conditions at step two was error, it was harmless. Step two was resolved in plaintiff's favor when the ALJ determined that his degenerative disc disease of the lumbar spine was a severe impairment and she proceeded to the step three analysis. AR at 22-23. The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the Step Two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (internal citations omitted). It follows that, since plaintiff's claims were not screened out at this step, he was not prejudiced by any error in the step-two analysis. Furthermore, the ALJ went on to state in her RFC findings that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ." AR at 23; *see, e.g., Sara Ann W. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 U.S. Dist. LEXIS 145544, *11-12, 2018 WL 4088771 (E.D. Wash. Aug. 27, 2018) ("[T]he ALJ specifically noted that she considered all symptoms in assessing the residual functional capacity. Accordingly, the

Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless."). More significantly, plaintiff fails to identify any evidence demonstrating that his obesity, hip/bone spurs, annular tear, Lumbosacral Spondylosis, or GERD caused limitations not accounted for in his RFC. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). Thus, any error at step-two was, at most, harmless.

## II. Failure to Weigh Combined Effect of Impairments at Step Three

Plaintiff notes that, at step three, the ALJ held that "[t]he claimant's impairment does not meet or medically equal the criteria of any medical listing." AR at 22. Plaintiff argues that the use of the singular "impairment" is clear evidence that the ALJ failed to assess the individual and collective effect of all of his impairments. As the Commissioner correctly points out, however, this would be reversible error only if plaintiff offered some theory as to how his impairments actually combined to equal a listed impairment. In *Lewis*, the Ninth Circuit rejected an argument made under similar circumstances:

> The ALJ did not discuss the combined effects of Lewis's impairments, or compare them to any listing. Unlike the claimants in Lester and Marcia, however, Lewis has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment. Nor has he pointed to evidence that shows that his combined impairments equal a listed impairment.
>
> …
>
> The ALJ did not err in concluding that Lewis's conditions did not equal a listed impairment.

236 F.3d at 514. *See also Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). Plaintiff has not shown that his impairments equal a listed impairment and, thus, he is not entitled to relief on this claim.

/////

/////

6

### III. Errors in Weighing Medical Evidence

Plaintiff's arguments regarding the ALJ's evaluation of medical evidence are subdivided into two separate sub-claims. First, he contends that the ALJ offered insufficient reasons for disregarding the opinions of Dr. Hanley, his chiropractor. Second, he contends that the ALJ offered insufficient reasons for assigning great weight to the opinions of non-examining state agency physicians Sheehy and Christian. Neither argument is persuasive.

#### A. Dr. Hanley

The ALJ may discount testimony from non-acceptable medical sources, like chiropractors, if she provides reasons germane to that witness for doing so. *See Mollina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). And, at the times relevant to plaintiff's disability claims, a chiropractor was considered an "other source." *See, e.g.*, *Ball v. Colvin*, 607 F. App'x 709, 710 (9th Cir. 2015). The question, then, is whether the ALJ provided germane reasons for discounting Dr. Hanley's opinions. In her decision, the ALJ discounted Dr. Hanley's opinion for several reasons. She noted that Dr. Hanley's assessment was: (1) made very near to plaintiff's onset date and was not consistent with more recent medical records; (2) inconsistent with other, more recent medical findings indicating that plaintiff's condition was stable; and (3) inconsistent with plaintiff's activities of daily living. AR at 25. The ALJ's reasons were germane.

Dr. Hanley authored his findings in August of 2012 and June of 2013. AR at 283, 306. In June of 2013, Dr. Hanley assessed the following work restriction for plaintiff:

> Patient should be restricted from lifting greater than 70 pounds, 8-12 times per day. He should be precluded from repetitive bending and lifting. He is precluded from any static standing greater than 10 minutes without a brief break to change positions before resuming. He is precluded from any static sitting or driving greater than 2 hours without a brief break to change positions to standing before resuming another stint. He should be precluded from any occupations that require prolonged static forward flexed postures.

AR at 317. His diagnoses, issued alongside the foregoing restriction, found "desiccation with internal disruption" of the L4-L5 disc and L5-S1 disc. *Id.* Dr. Hanley also diagnosed left thigh paresthesias. *Id.* He noted that previous procedures undertaken to treat these conditions had not provided plaintiff with any significant relief. *Id.* at 321. Subsequent medical records showed, as

the ALJ pointed out, marked improvement. In July of 2015, for instance, medical records note that plaintiff was "doing his best to stay off any pain meds at this time" and "maintains a pretty active lifestyle and . . . is thinking about starting to run again." *Id.* at 547. In January of 2016, records noted that plaintiff's pain level had improved and he was taking less of his Tramadol and Tylenol 3. *Id.* at 539. Plaintiff also repeatedly told his provider that his pain was not high. In July of 2013, not long after the second treatment visit with Dr. Hanley, plaintiff rated his pain as a "one" on a ten-point scale. *Id.* at 361. The numbers remained consistently low to moderate on the ten-point scale:

- In August of 2013, plaintiff rated his pain as a "three." *Id.* at 356.
- In January of 2014, plaintiff rated his pain as a "two." *Id.* at 348.
- In November of 2014, plaintiff rated his pain as a "four." *Id.* at 569.
- In October of 2015, plaintiff rated his pain as a "two." *Id.* at 542.
- In January of 2016, plaintiff rated his pain as a "two." *Id.* at 539.
- In April of 2016, plaintiff rated his pain as a "one." *Id.* at 535.
- In August of 2016, plaintiff rated his pain as a "three." *Id.* at 530.[2]

Inconsistency with medical evidence is a germane reason for discounting the opinion of an "other source." *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Plaintiff might argue that his overall medical record is subject to alternative interpretations that are more favorable to Dr. Hanley's 2013 assessment. But the existence of other, rational interpretations of the record is not a basis for reversal. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). Further, the disagreement as to plaintiff's capabilities between Hanley and the state agency medical consultants (who issued their findings in December of 2014 and February of

/////

---

[2] In a separate section of his brief, plaintiff points out that he had several medical evaluations where his pain was "five" or above on the scale. The court has not overlooked these evaluations, but notes that they hew closer to an exception than a rule. The disparate dates of evaluations cited by plaintiff – January of 2013 (AR at 378), May of 2013 (*Id.* at 486-88), January of 2015 (*Id.* at 565), and April of 2015 (*Id.* at 553) – supports a reading that plaintiff's pain, more often than not, fell into a low to moderate level.

8

2015) lends additional credence to the ALJ's finding that Hanley's opinion was inconsistent with the record as a whole. AR at 64-73, 75-81.[3]

B.     State Agency Medical Consultants

Plaintiff argues that the ALJ failed to offer "any rational reasons" for according great weight to the opinions of the state agency medical consultants. He notes that the ALJ found "nothing of record to contradict the State agency medical consultants' opinions." AR at 25. Plaintiff argues that the opinions *are* contradicted by the record, insofar as it indicates that he received multiple spinal injections and prescription pain relievers. ECF No. 13 at 18. This argument is unpersuasive because it appears to misinterpret the state agency medical consultant opinions. As the Commissioner points out, neither physician assessed plaintiff with a clean bill of health. Rather, both noted his spinal disorders and assessed exertional limitations based thereon. *See* AR at 67-69, 78-81. Thus, the fact that plaintiff underwent treatment for his back issues does not establish that the physicians' opinions are contradicted by the record.

Plaintiff also argues that neither state agency medical consultant referenced certain aspects of his treatment, including, *inter alia*, medial branch blocks, an epidural spinal injection, and the prescription of opioid pain relievers. But plaintiff cites no authority which establishes that a reviewing physician is required to explicitly reference every part of the record in formulating an opinion. Such a standard would, due to the expansive record in many social security cases, render the issuance of such opinions a virtual impossibility.[4]

---

[3] The ALJ did not explicitly state that she was rejecting Dr. Hanley's opinion because of its inconsistency with those of the state agency medical consultants. Nevertheless, the Ninth Circuit has held that a reviewing court may draw "specific and legitimate inferences" from an ALJ's opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion about the onset date because. . . .' But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Here, the ALJ specifically noted that the opinions of the state agency medical consultants was "reasonable and consistent with the objective medical evidence." AR at 25. By contrast, she noted that Dr. Hanley's opinion was "inconsistent with the record as a whole." *Id.* Given that the opinions of the consultants (both of whom, it must be emphasized, are medical doctors) form part of the overall record, the court is confident in inferring the ALJ's reliance thereon.

[4] The court also rejects plaintiff's contention that the ALJ should have assigned greater

IV.     Failure to Provide Adequate Reasons for Discounting Plaintiff's Subjective Testimony

Next, plaintiff argues that the ALJ failed to sufficiently explain her finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 24. He points out that the ALJ did not identify what specific testimony was not credible. ECF No. 13 at 21-22. Plaintiff also accuses the ALJ of misrepresenting the scope of his daily activities. *Id.* at 22. The court is unconvinced.

In *Lingenfelter v. Astrue* and in regard to the assessment of a claimant's credibility, the Ninth Circuit articulated the following:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Here, the ALJ found that plaintiff's medical impairment could reasonably have been expected to cause the

---

weight to the opinion of Dr. Hanley over that of the state agency medical consultants. Such assignment of weight would make little sense given that the ALJ concluded that the state agency medical consultants' conclusions were in greater accord with the overall record. Additionally, the great emphasis which plaintiff puts on Dr. Hanley's treating relationship is difficult to square with the actual record, which indicates that Hanley saw plaintiff twice (once in August of 2012 and a second time in June of 2013). AR at 283, 306. Theirs was not a doctor-patient relationship that was either continuous or long lasting. Finally, it cannot be ignored that Dr. Hanley is not a medical doctor; he is a chiropractor. The court points this out not to disparage either Dr. Hanley in particular or the chiropractic profession as a whole. Nevertheless, and especially given the regulations at the time of the decision, an ALJ could hardly be faulted for putting greater stock in the opinions of medical doctors.

symptoms he alleged. AR at 24. Accordingly, the issue before the court concerns the second step analysis - whether the ALJ offered specific, clear and convincing reasons for discounting the "intensity, persistence and limiting effects of [plaintiff's] symptoms . . ." *Id.*

Plaintiff complains that the ALJ's opinion does not specifically identify what testimony is not credible. ECF No. 13 at 21-22. But there is hardly an exhaustive inventory of pain testimony to parse and there can be little doubt as to what the ALJ was addressing. At his hearing, plaintiff testified that his pain "varies all the time."[5] AR at 49. He claimed that, on some days, he could "do, you know, all my household stuff and be relatively comfortable on a good day." *Id.* Plaintiff stated that he often experienced pain the day after, however. *Id.* Accordingly, and as the ALJ underlined in her decision, it was relevant that the medical evidence indicated that he was receiving conservative[6] treatment and his pain level was broadly stable. *Id.* at 23. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

---

[5] Curiously, at the same hearing plaintiff testified that the condition of his back had remained "pretty steady." AR at 54. The court allows that it may be that plaintiff was using the term "steady" in a global sense and attempting to convey that the pain fluctuations were themselves constant. In any event, the ALJ did not reference or explore this inconsistency.

[6] Plaintiff argues that his treatment was not 'conservative' and points to the fact that he underwent epidural injections and was prescribed multiple opioids. ECF No. 13 at 22. At the time of the hearing, however, he indicated that he was only taking Tylenol 3 for his pain. AR at 48-49. And multiple treatment notes indicated substantial improvement and reduction of opioid prescriptions. *Id.* at 539 (January 2016 treatment notes – "[Plaintiff] is taking less of his Tramadol and Tylenol 3, as the pain has been better for him recently."); 542 (October 2015 treatment notes – "Patient presents for a scheduled med check and for refill of his Tylenol 3 and Tramadol 50mg, which he takes pm back pain. He states that he only uses these on occasion, rarely, only for his severe pain related to increase in strenuous activities."). The fact that plaintiff had epidural injections does not, standing alone and factored into the longitudinal record, rebut the label of 'conservative.' Plaintiff admitted that he had never had surgery, that he was not continuing to take the injections, and that, at the time of his hearing, he was managing his condition with only Tylenol 3. *Id.* at 47-48, 53-54.

Separately, plaintiff argues that he should not be penalized for not taking opioids insofar as they had adverse side effects. ECF No. 13 at 23. In a footnote, he also references the ongoing national epidemic of opioid addiction and claims that is odd for the ALJ to penalize him for taking less opioid pain medication. *Id.* at 23 n.7. These points, taken in isolation, are somewhat persuasive. But plaintiff's treatment notes, as noted *supra*, represent that he was scaling back his medication because he was coping well and not out of any fear of addiction.

Elsewhere, plaintiff complains that the ALJ misrepresented the scope of his daily activities in discounting his testimony. He argues that her references to his ability to do laundry, dishes, and chores for his parents when able, overlook his testimony that he cannot cook or shop for himself. ECF No. 13 at 22. The court does not agree and, in fact, finds it difficult to follow the logic of plaintiff's argument on this point. The fact that plaintiff cannot cook or shop for himself does not undercut, in any automatic way, potential inferences a finder of fact might draw from the activities plaintiff stated he *is* able to do. In any event, an ALJ "may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . ." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, plaintiff's ability to live alone, do household chores, and occasionally assist his parents offer some basis for discrediting his claims of total debilitation. *Id.* ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

## V. Errors at Steps Four and Five

Plaintiff offers two separate theories for reversal with respect to this claim. His first is essentially a summation. He points to the foregoing claims alleging error in the weighing and assessing of medical evidence and argues that, if they are credited, the RFC cannot be accurate. It follows, he argues, that if the RFC is not accurate, it necessarily invalidates any subsequent analysis that relies upon it. The court, for the reasons stated *supra*, does not credit the arguments finding fault with the ALJ's handling of medical evidence. Thus, it obviously declines to reverse on this basis.

Plaintiff's second theory faults the ALJ's finding that he could return to a former job as a "Produce Clerk." He argues that his description of that job included work falling under the "heavy" exertional level. ECF No. 13 at 25. He notes that the vocational expert ("VE") expressed some confusion about the specifics of this former job and assigned a job code for a position that "bears no resemblance" to plaintiff's former job. *Id.* The ALJ's decision identified two other jobs – Cashier (DOT 211.462-018) and fast food worker (DOT 311.472-010) – which

plaintiff could perform. AR at 28. Accordingly, this error was inconsequential to the ultimate non-disability determination and, therefore, harmless. *See Tommasetti*, 533 F.3d 1035, 1038 (an error is harmless and does not warrant reversal if it is "inconsequential to the ultimate nondisability determination.").

<u>CONCLUSION</u>

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED;

3. The Clerk is directed to enter judgment in the Commissioner's favor and close this case.

DATED: September 24, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE